## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HEATHER RUDY, MARY COLLINS TERRY, PAMELA SWIES, and VERLINDA HOLLOWAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEEKMAN 1802, INC.,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Heather Rudy, Mary Collins Terry, Pamela Swies, and Verlinda Holloway, ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant Beekman 1802, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

### NATURE OF THE ACTION

1.     This is a putative class action lawsuit on behalf of purchasers of Beekman Probiotic Skincare Products[1] (collectively, the "Probiotic Products"). Defendant markets and sells the Probiotic Products as skincare products containing "probiotics." However, the Probiotic Products do not contain probiotics because a) the microbial derived ingredients assigned the "probiotic" moniker are purchased in a dead state, and b) the preservatives, *i.e.* antimicrobial chemicals, employed in the Probiotic Products would render any meaningful amount of probiotic cultures inert and therefore useless.

---

[1] The Probiotic Skincare Products include the Bloom Cream Daily Probiotic Moisturizer, Milk Probiotic Skincare Starter Kit, Milk Drops Probiotic Ceramide Serum, Milk Bar Probiotic Facial Cleansing Bar, and Dewy Kiss Probiotic Lip Serum.

2.      Probiotic containing skincare products, like the Probiotic Products, are beauty products that purportedly contain live microbial strains, usually bacterial, and that purportedly target the skin microbiome and preserve the skin's microbiological balance.  The probiotic cosmetic industry was valued at $252.5 million dollars in 2019 and is expected to grow at an annual growth rate of 6.5% from 2020 to 2027.

3.      Consumers desire probiotic skincare products because probiotics purportedly improve skin appearance by reducing acne, rosacea, eczema, redness, and other skin ailments.

4.      However, contrary to Defendant's representation, the Probiotic Products cannot contain active probiotics.  The Probiotic Products contain preservatives that are intended to prevent or decrease microbial growth and therefore render any active probiotic ingredients inert.

5.      The microbial-derived raw material ingredients in the Probiotic Products that use the term "probiotics" are manufactured by companies that render the live organisms dead before they are sold to and used by cosmetic companies such as Beekman.

6.      As such, Defendant engaged in widespread false and deceptive advertising on its Probiotic Products by claiming the Probiotic Products contain probiotics (the "Probiotics Claims"). Every package of Probiotic Products prominently claims that the product includes "probiotics."

7.      Plaintiffs and Class Members purchased Probiotic Products designed, marketed manufactured, distributed, and sold by Defendant as containing "probiotics."  Further, Plaintiff and Class Members relied to their detriment on Defendant's representation that the Probiotic Products contain "probiotics."  Plaintiffs and Class Members would not have paid to purchase Defendant's Probiotic Products – or would not have paid as much as they did to purchase them – had they known that they did not in fact contain "probiotics."  Plaintiffs and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

## PARTIES

8.      Plaintiff Heather Rudy is a citizen of Illinois, residing in Gurnee, Illinois.  In June 2021, Plaintiff Rudy purchased a Beekman Milk Probiotic Skincare Starter Kit for her personal use for approximately $59.00 from Ulta in Gurnee, Illinois.  Prior to her purchase of the Beekman Milk Probiotic Skincare Starter Kit, Plaintiff Rudy reviewed the product's labeling and packaging and saw that the Beekman Milk Probiotic Skincare Starter Kit contained "probiotics." Plaintiff Rudy relied on that labeling and packaging to choose her Probiotic Products over comparable products.  Plaintiff Rudy saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Probiotic Products contained "probiotics."  Plaintiff Rudy relied on these representations and warranties in deciding to purchase her Probiotic Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Probiotic Products on the same terms had she known these representations were not true.  However, Plaintiff Rudy remains interested in purchasing the Probiotic Products with probiotics and would consider the Probiotic Products in the future if Defendant ensured the products actually contained probiotics.  In making her purchase, Plaintiff Rudy paid a substantial price premium due to the false and misleading Probiotic Claims. However, Plaintiff Rudy did not receive the benefit of her bargain because her Probiotic Products did not, in fact, contain probiotics.  Plaintiff Rudy also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.   Plaintiff Rudy further understood that the purchase came with Defendant's representation and warranties that her Probiotic Products contained "probiotics."

9.      Plaintiff Mary Collins Terry is a citizen of Illinois, residing in Chicago, Illinois.  On or about January 15, 2022, Plaintiff Terry purchased a Beekman Milk Bar Probiotic Facial Cleansing Bar and Milk Probiotic Skincare Starter Kit for her personal use for approximately

$87.00 and $119.00 respectively from a retail store in Chicago, Illinois. Prior to her purchase of these two products, Plaintiff Terry reviewed the product's labeling and packaging and saw that the Beekman Milk Probiotic Skincare Starter Kit and Milk Bar Probiotic Facial Cleansing Bar contained "probiotics." Plaintiff Terry relied on that labeling and packaging to choose her Probiotic Products over comparable products. Plaintiff Terry saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Probiotic Products contained "probiotics." Plaintiff Terry relied on these representations and warranties in deciding to purchase her Probiotic Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Probiotic Products on the same terms had she known these representations were not true. However, Plaintiff Terry remains interested in purchasing the Probiotic Products with probiotics and would consider the Probiotic Products in the future if Defendant ensured the products actually contained probiotics. In making her purchase, Plaintiff Terry paid a substantial price premium due to the false and misleading Probiotic Claims. However, Plaintiff Terry did not receive the benefit of her bargain because her Probiotic Products did not, in fact, contain probiotics. Plaintiff Terry also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Terry further understood that the purchase came with Defendant's representation and warranties that her Probiotic Products contained "probiotics."

10.     Plaintiff Pamela Swies is a citizen of Illinois, residing in Brookfield, Illinois. On or about May 4, 2021, Plaintiff Swies purchased a Beekman Bloom Cream Daily Probiotic Moisturizer for her personal use for approximately $15.00 from a retail store in Illinois. Prior to her purchase of the Beekman Bloom Cream Daily Probiotic Moisturizer, Plaintiff Swies reviewed the product's labeling and packaging and saw that the Beekman Bloom Cream Daily Probiotic

Moisturizer contained "probiotics." Plaintiff Swies relied on that labeling and packaging to choose her Probiotic Products over comparable products. Plaintiff Swies saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Probiotic Products contained "probiotics." Plaintiff Swies relied on these representations and warranties in deciding to purchase her Probiotic Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Probiotic Products on the same terms had she known these representations were not true. However, Plaintiff Swies remains interested in purchasing the Probiotic Products with probiotics and would consider the Probiotic Products in the future if Defendant ensured the products actually contained probiotics. In making her purchase, Plaintiff Swies paid a substantial price premium due to the false and misleading Probiotic Claims. However, Plaintiff Swies did not receive the benefit of her bargain because her Probiotic Products did not, in fact, contain probiotics. Plaintiff Swies also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Swies further understood that the purchase came with Defendant's representation and warranties that her Probiotic Products contained "probiotics."

11. Plaintiff Verlinda Holloway is a citizen of Illinois, residing in Chicago, Illinois. On or about January 15, 2022, Plaintiff Holloway purchased a Beekman Milk Bar Probiotic Facial Cleansing Bar and Beekman Bloom Cream Daily Probiotic Moisturizer for her personal use for approximately $200 in total from a retail store in Chicago, Illinois. Prior to her purchase of the Beekman Milk Bar Probiotic Facial Cleansing Bar and Beekman Bloom Cream Daily Probiotic Moisturizer, Plaintiff Holloway reviewed the product's labeling and packaging and saw that the Beekman Milk Bar Probiotic Facial Cleansing Bar and Beekman Bloom Cream Daily Probiotic Moisturizer contained "probiotics." Plaintiff Holloway relied on that labeling and packaging to

choose her Probiotic Products over comparable products. Plaintiff Holloway saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Probiotic Products contained "probiotics." Plaintiff Holloway relied on these representations and warranties in deciding to purchase her Probiotic Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Probiotic Products on the same terms had she known these representations were not true. However, Plaintiff Holloway remains interested in purchasing the Probiotic Products with probiotics and would consider the Probiotic Products in the future if Defendant ensured the products actually contained probiotics. In making her purchase, Plaintiff Holloway paid a substantial price premium due to the false and misleading Probiotic Claims. However, Plaintiff Holloway did not receive the benefit of her bargain because her Probiotic Products did not, in fact, contain probiotics. Plaintiff Holloway also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Holloway further understood that the purchase came with Defendant's representation and warranties that her Probiotic Products contained "probiotics."

12. Defendant Beekman 1802, Inc. ("Beekman") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Schenectady, New York. Beekman manufactures, sells, and/or distributes Beekman-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of the Probiotic Products. Beekman manufactured, marketed, and sold the Probiotic Products during the class period.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members

of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

14.     This Court has personal jurisdiction over Defendant because it conducts substantial business within Illinois, including the manufacturing, sale, marketing, and advertising of the Probiotic Products.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Plaintiffs purchased the Products in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## FACTUAL ALLEGATIONS

### A.     Probiotic Formulations

16.     Probiotics are *live* microorganisms that, when administrated in adequate amounts, confer a health benefit on the host. The term probiotics excludes metabolic by-products of microorganisms, dead microorganisms, or other microbial-based, non-viable products.

17.     In 2001, the Food and Agriculture Organization of the United Nations ("FAO") and the World Health Organization ("WHO") convened to establish guidelines regarding probiotics. The organizations defined "probiotics" as "Live organisms which when administered in adequate amounts confer a health benefit on the host."[2]

18.     In 2013, the International Association for Probiotics and Prebiotics ("ISAPP") also defined probiotics as "Live microorganisms that, when administered in adequate amounts, confer

---

[2] *See* http://www.fao.org/3/a0512e/a0512e.pdf (Last visited December 15, 2021.)

a health benefit on the host." They also noted that this definition is "the widely accepted scientific definition around the world."[3]

19.    Preservatives are bioactive ingredients or substances that have the ability to prevent or decrease microbial growth in a cosmetic product. Antimicrobial preservatives protect cosmetics and skincare products from contamination of microorganisms, like bacteria, yeast and mold, and can prolong the shelf-life of cosmetic products. Preservatives are a key component in making a cosmetic inhospitable to microorganisms. Inclusion of a preservative into a cosmetic that contains probiotics would render a cosmetic inhospitable to live microorganisms such as probiotics.

20.    Skincare products containing "probiotics" are often formulated with both preservatives and tyndallized, or heat treated, probiotics. Tyndallization intentionally kills the microorganisms and preservatives make the skincare products inhospitable to them. As a result, skincare products, like the Probiotic Products, cannot provide any of the promised benefits of a live microbe because the active ingredient, one or more probiotic organisms, has been rendered inert and therefore cannot provide any purported health benefits.

**B.    Defendant's Misrepresentations Regarding The Probiotic Products**

21.    Beekman sells, manufactures, and markets its probiotic line of skincare products, which are sold as a skincare regimen intended to provide consumers with a "healthy, dewy, radiant complexion." On the front of the Beekman Products' Packaging, the products are touted as containing "probiotics:"

_____

[3] *See* https://isappscience.org/for-scientists/resources/probiotics/  (Last visited December 15, 2021.)





22.     However, the Probiotic Products contain preservatives that render any added

probiotics inert, and are therefore ineffective:

| Product | Preservative |
|---|---|
| Dewy Kiss Probiotic Lip Serum | Caprylic/Capric Triglyceride, Glycerin, and Ethylhexylglycerin |
| Milk Drops Probiotic Ceramide Serum | Citric Acid, Glycerin, Sodium Benzoate |
| Bloom Cream Daily Probiotic Moisturizer | Caprylic/Capric Triglyceride, Glycerin, and Sodium Benzoate |
| Milk Bar Probiotic Facial Cleansing Bar | Glycerin and Sodium Chloride |

23.     Defendant's advertising and marketing of the Probiotic Products are false and misleading and omit material information.  Beekman prominently advertises on the front label that the Probiotic Products contain "probiotics."  Consumers reasonably expect that Probiotic Products will, in fact, contain live probiotics, by definition.  Nowhere on the Probiotic Products' packaging does Defendant inform consumers that the Probiotic Products do not contain live probiotics. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, violated consumer protection statutes.

24.     Defendant knew or should have known that the Probiotic Products' express Probiotic Claims were false, deceptive, and misleading, and that Plaintiffs, the Class, and Subclass Members would not be able to tell that the Probiotic Products did not contain probiotics absent Defendant's express disclosure.

25.     Defendant employs professional chemists and microbiologists to create the chemical formulas for the Probiotic Products.  Therefore, Defendant through its employees knew or should have known that the Probiotic Products did not contained probiotics and that it was deceiving consumers by labeling the Products as containing "probiotic" or "microbiome technology."

26.     On information and belief, Defendant, through its employees, did know that the Probiotic Products did not contain probiotics, but chose to include the Probiotics Claims because

10

they did not believe their customers would know the difference, or, more insidiously, that *removal* of the word "probiotics" from the product name, positioning, messaging, and branding would render the products far less likely to compel consumer purchase.

27.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class Members would not have purchased the Probiotic Products or would not have paid as much as they did for such products.  Thus, Plaintiffs and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

28.     Plaintiffs seek to represent a class defined as all people who purchased any Probiotic Products that falsely advertised that the product purportedly contained "probiotics" during the applicable statute of limitations (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

29.     Plaintiffs also seek to represent a subclass consisting of Class Members who reside in Illinois (the "Illinois Subclass").

30.     Plaintiffs also seek to represent a subclass consisting of all persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington that purchased any Probiotic Product that falsely advertised that the product purportedly contained probiotics (the "Consumer Fraud Multi-State Subclass").

31. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

32. **Numerosity.** The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in the Subclasses. Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

33. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant made false and/or misleading statements to the consuming public concerning the probiotic content of Probiotic Products;

(b) Whether Defendant omitted material information to the consuming public concerning the probiotic content of Probiotic Products;

(c) Whether Defendant's labeling and packaging for the Probiotic Products is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of Probiotic Products;

(e) Whether Defendant's representations concerning the Probiotic Products were likely to deceive a reasonable consumer;

(f)      Whether Defendant's omissions concerning Probiotic Products were likely to deceive a reasonable consumer;

(g)      Whether Defendant represented to consumers that Probiotic Products have characteristics, benefits, or qualities that they do not have;

(h)      Whether Defendant advertised the Probiotic Products with the intent to sell them not as advertised;

(i)      Whether Defendant falsely advertised Probiotic Products;

(j)      Whether Defendant made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about Probiotic Products;

(k)      Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(l)      Whether Plaintiffs and Class and Subclass Members are entitled to damages.

34.      **Typicality.**  Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the probiotic content of Probiotic Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

35.      **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass Members.

36.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

37.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclasses as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclasses as a whole.

## COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
815 ILCS 505/1, *et seq.*
(On behalf of the Illinois Subclass)**

38.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

39.    Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Illinois Subclass.

40.    Plaintiffs assert that Defendant violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA"), which prohibits the use of "unfair and deceptive practices" in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate that purpose.

41.    Plaintiffs and Illinois Subclass Members are consumers as defined in 815 ILCS 505/1(c) and (e).

42.    Defendant knew consumers would purchase Probiotic Products and/or pay more for them under the false – but reasonable – belief that Probiotic Products contained probiotics, when they do not.

43.    Defendant's misconduct, including the misrepresentations and the omission of material facts, took place in the course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

44.    Defendant's activities and actions, in particular with respect to the Probiotic Products sold within Illinois, emanated from the State of Illinois.

45.    By undertaking the conduct at issue herein, Defendant has engaged in unfair or deceptive acts prohibited by the ICFA.

46.    If not for Defendant's deceptive and unfair acts, including Defendant's false and misleading advertising that the Probiotic Products contain "probiotics" as alleged herein, Plaintiffs

and the Illinois Subclass Members would not have purchased the Probiotic Products or would have paid significantly less for them.

47.     Defendant, at all relevant times, knew or should have known that Plaintiffs and the Illinois Subclass Members did not know and could not have reasonably discovered its deceptive and unfair acts prior to their purchases of the Probiotic Products.

48.     As a direct and proximate result of Defendant's violations of the ICFA, Plaintiffs and the Illinois Subclass Members sustained damages in an amount to be proven at trial.

49.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that on account of Defendant's conduct, Plaintiffs and the Illinois Subclass Members seek statutory and actual damages, punitive damages, injunctive relief, attorneys' fees and costs, and all other relief allowed under the ICFA.

**COUNT II**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS § 510/2, *et seq*.**
**(On behalf of the Illinois Subclass)**

50.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

51.     Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Illinois Subclass.

52.     Defendant is a "person" as defined by 815 ILCS §§ 510/1(5).

53.     Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), Defendant knew consumers would purchase Probiotic Products and/or pay more for them under the false – but reasonable – belief that Probiotic Products contained probiotics, when they do not.  By advertising so prominently that Probiotic Products contains probiotics, Defendant proves that information about probiotics is material to consumers.  If such information were not material, Defendant would not feature it prominently on the front label of

every Probiotic Products package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Probiotic Products to unsuspecting consumers across Illinois. If Defendant had advertised its Probiotic Products truthfully and in a non-misleading fashion, Plaintiffs and other Illinois Subclass Members would not have purchased them or would not have paid as much as they did for them.

54. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

55. The above unfair and deceptive practices and acts by Defendant was immoral, unethical, oppressive, and unscrupulous. The acts caused substantial injury to Plaintiffs and the Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

56. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and the Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the memberships.

57. Plaintiffs are entitled to such injunctive relief to ensure that Defendant ceases its unlawful acts and practices.

58. Plaintiffs and the Illinois Subclass Members seek all relief allowed by law, including injunctive relief, damages, and reasonable attorney's fees.

<u>COUNT III</u>
**Breach Of Express Warranty**
**(On Behalf Of The Class And The Illinois Subclass)**

59. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Illinois Subclass.

61.     As the designer, manufacturer, marketer, distributor, and/or seller of Probiotic Products, Defendant issued an express warranty by representing to consumers at the point of purchase that Probiotic Products contained probiotics. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and the Illinois Subclass.

62.     In fact, the Probiotic Products do not conform to Defendant's representations about probiotics because Probiotic Products do not, in fact, contain active probiotics. By falsely representing the Probiotic Products in this way, Defendant breached express warranties.

63.     On June 21, 2021, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff Heather Rudy and all other similarly situated purchasers. Defendant responded to Plaintiffs' counsel's letter and did not remedy its breach of express and implied warranties.

64.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and the Illinois Subclass were injured because they: (1) paid money for Probiotic Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Probiotic Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Probiotic Products they purchased had less value than if Defendant's representations about probiotics were truthful. Had Defendant not

18

breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Illinois Subclass Members would not have purchased the Probiotic Products or would not have paid as much as they did for them.

**COUNT IV**
**Breach of Implied Warranty**
**(On Behalf Of The Class And The Illinois Subclass)**

65. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

66. Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Illinois Subclass.

67. Defendant routinely engages in the manufacture, distribution, and/or sale of Probiotic Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

68. Plaintiffs and Members of the Class and Illinois Subclass were consumers who purchased Defendant's Probiotic Products for the ordinary purpose of such products.

69. By representing that the Probiotic Products contain probiotics, Defendant impliedly warranted to consumers that the Probiotic Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

70. Plaintiffs were the ultimate consumers of the products and intended purchasers of Defendant's Probiotic Products. Further, Defendant made an express warranty regarding its Probiotic Products to Plaintiffs and Illinois Subclass members, i.e. that they contained live probiotics.

71. However, the Probiotic Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

72.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Illinois Subclass were injured because they paid money for Probiotic Products that would not pass without objection in the trade or industry under the contract description.

## COUNT V
### Unjust Enrichment
### (On Behalf Of The Class and The Illinois Subclass)

73.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Illinois Subclass against Defendant.

75.     Plaintiffs, Class Members, and Illinois Subclass Members conferred benefits on Defendant by purchasing the Probiotic Products.

76.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs, Class Members, and Illinois Subclass Members' purchases of the Probiotic Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Probiotic Products would contain probiotics.  Those misrepresentations caused injuries to Plaintiffs, Class Members, and Illinois Subclass Members because they would not have purchased Probiotic Products at all, or on the same terms, if the true facts were known.

77.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs, Class Members, and Illinois Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs, Class Members, and Illinois Subclass Members for its unjust enrichment, as ordered by the Court.

## COUNT VI
### Violation of State Consumer Fraud Acts
### (On Behalf Of The Consumer Fraud Multi-State Subclass)

78.     Plaintiffs hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

79.     Plaintiffs bring this claim individually and on behalf of the Members of the Consumer Fraud Multi-State Subclass.

80.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass[4] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

81.     Defendant intended that Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

82.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

83.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

---

[4] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the nationwide Class, the Illinois Subclass, and the Consumer Fraud Multi-State Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiffs, the nationwide Class, the Illinois Subclass, and Consumer Fraud Multi-State Subclass against Defendant on all counts asserted herein;

d. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

f. Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g. Ordering Defendant to pay pre-judgment interest on all amounts awarded;

h. Providing such further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: April 6, 2022                    Respectfully submitted,

                                        By:  */s/ Gary Klinger*

                                        Gary M. Klinger
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        227 W. Monroe Street, Suite 2100
                                        Chicago, IL 60606
                                        T:  866-252-0878
                                        F:  865-522-0049
                                        gklinger@milberg.com

                                        Russell Busch
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        979 Green Bay Rd
                                        Highland Park, IL 60035
                                        Tel: (865) 247-0080
                                        Fax: (865) 522-0049
                                        rbusch@milberg.com

                                        Nick Suciu III*
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN, PLLC**
                                        6905 Telegraph Rd., Suite 115
                                        Bloomfield Hills, MI 48301
                                        Tel: 313-303-3472
                                        suciu@milberg.com

                                        J. Hunter Bryson*
                                        **MILBERG COLEMAN BRYSON**
                                        **PHILLIPS GROSSMAN PLLC**
                                        900 W. Morgan Street
                                        Raleigh, NC, 27603
                                        Tel: (919) 600-5000
                                        Fax: (919)600-5035
                                        hbryson@milberg.com

                                        *Attorneys for Plaintiffs*
                                        *Pro hac vice forthcoming*